23-753 Thomas v. Mason May it please the court, Max Rodriguez, on behalf of appellant Adrian Thomas, and I would like to reserve three minutes for rebuttal. Your honors, we argue in this case that the District Court committed error by granting summary judgment based on qualified immunity when there were disputed questions of material fact that in fact the District Court found on the merits of the claims in the case and there was there were clearly established rights under the qualified immunity analysis and instead the court made the error of determining as a matter of law that it was appropriate to grant qualified immunity anyway based on the objective reasonableness of the conduct. And in this case there was a and an unwarranted prosecution that resulted in Mr. Thomas, the plaintiff, being suspected, coerced into a false confession, and wrongly convicted for the murder of his young child. The question here is, boils down, does it not to qualified immunity? Correct. On all of the various counts. And so doesn't qualified immunity really turn on whether or not reasonable officers, it's debatable among reasonable officers, as to whether or not there was probable cause and malice. Isn't that really what we're talking about here? Yes, Your Honor, that is. At the time of the prosecution and at the time of the trial. Yes, so you're correct. So the conclusion by the New York Court of Appeals six years later really doesn't bear on this case. Would you agree with that? I don't think that it binds this case, Your Honor. I think that the matter of law, they found on certain facts that this was an involuntary confession six years later. Correct, Your Honor. We're focusing on what the officers understood at the time. Yes, that is correct. I think that the reasoning is instructive with respect to the Court of Appeals perspective on the fact that it wasn't breaking new ground. That was an issue that I discussed extensively in the reply brief, that the principles at issue here that were being applied to determine that there was error by the lower courts in the New York State process of his direct appeal were not, it was not a novel reinterpretation of those precedents. So with respect to determining whether there was a clearly established right, it is relevant and I would encourage you to consider the Court of Appeals decision on that basis. And what is the established law that you're relying upon here? So with respect to involuntary confessions, no false confessions? So this court laid that out and then has referenced it in the Weaver case from 1994, that coercion, that coerced confessions violated an individual's civil rights and then courts in this circuit have repeatedly applied that. Can you be more specific as to this case because that's a pretty high level of generality? Sure, so I would continue to maintain that a higher level of specificity is not necessary under this court's precedents, but nevertheless to the extent you were looking for that, each of the tactics that were employed in this particular interrogation, and this is discussed at length in the Court of Appeals decision, the New York State Court of Appeals decision, touch on principles related to threats to fundamental rights that, for example, threatening an innocent spouse, threatening that withholding certain information that the officers expected would cause the death of his young child, even though unfortunately the child was already brain-dead, and also suggesting scenarios to him that he adopted, and as the Court of Appeals pointed out, and as the defendants did not dispute in the record below on summary judgment, each of the scenarios at issue that he ultimately falsely confessed to. Suggesting what happened to the, each one of these, you know, with regard to each one of these three, and this is what the district court did, if you look at them separately, those are tactics that have not been ruled to be unconstitutional or improper when police are interrogating people. They can deceive, they can suggest, you know, when they're interrogating people, you don't just sit back and say what happened, and then accept whatever the person says. You have a discussion, and during the discussion, you make certain, the officers can make certain statements designed to facilitate the confession without suggesting that it's, or necessarily creating the impression that it's, they want a false confession. I know this is what happened, but I want you to say not this, something like that. That's a different kind of case that we have here. What we have here is a case where the officers are trying to understand, trying to get the information that they want, that they believe is accurate and consistent with what the doctors have said, and so forth, because that's the narrative that they're working on, and the fact that they have a hunch or a narrative to begin with doesn't preclude a questioning that sort of aligns with that. So I would respectfully disagree in the following respect, which is that, so when analyzing whether a confession is coerced or is voluntary, it's a totality of the circumstances analysis, and I think it's very important to emphasize that one of the tactics that was deployed here was the threat to his spouse, and it's in the record that there was no probable cause to arrest his spouse, and as the district court did correctly point out, although the ultimate holding was error, that tactic might be acceptable when the police officers know that they have probable cause and therefore can credibly make that threat, but they admitted they didn't have probable cause in this context and deployed that tactic anyway. So in that respect, getting into the granularity, as we've been discussing, I would disagree in that respect, but I would also say it would be, I think, a significant deviation from this court's precedence in approaching the issue to get to that level of granularity. I don't think that granularity is necessary under Weaver and under Zari, and so I think if we were to, if this court were to say, no, the right has to be clearly established at a level beneath that, I think that would be a departure, and I would urge you not to take the law away. One thing that troubles me about this case, from your perspective, is the fact that the issue of whether the confession was voluntary or not was reviewed at three different levels, and it was only at the third level, the New York Court of Appeals, that they decided that it was involuntary, and I don't, you know, a district, just district judge came to, a trial judge came to the different conclusion, as did the appellate division, so it seems to me that it was, it wasn't clear to me that it was absolutely established law before these other courts got involved, that what was done here was, it was, that the confession was, was, was voluntary, was involuntary. So I see that I'm over my time, may I answer? So I think that, I think as a structural matter, no one has really made that argument with respect to where this case sat, which was, my position is that the right was clearly established under this court's precedence, and the real issue was, was concerning objective reasonableness. I think, but I think that fundamentally the real problem with that is that it would essentially create a version of qualified immunity that's an exception that qualified, that, that swallows the rule, because there are so many instances where individuals who argue that they, their confessions were false, and were involuntary, receive adverse decisions in courts below. And indeed, they might not even obtain a favorable result on that point until collateral attack. It would essentially foreclose Section 1983, really, for almost all of those plaintiffs. Yeah, and, and that's why, you know, confessions are reviewed in criminal cases to decide whether they were properly admitted or not. And in this case, that was not, ultimately, it was found to be improperly admitted, a new trial was ordered. But that's not the, not the kind of case we have here. We have a, a 1983 action in which the question is, what were the, what were the police entitled to think, or was it debatable that there was, that, that That's why it seems to me that, you know, two courts thought that that wasn't the case, that, that, that they were acting reasonably. One, one ultimately, the highest court said no, but I can't get, if, if, if the, if the courts can't get the law straight and can't, can't get it understood, I'm wondering why the police would have the prescience to be able to, to reach the conclusion that what they did was cause an involuntary confession. May I answer? Yes. So I think, I, I think the essential thing to distinguish there, and I would encourage this court to, to look back to its decision in the McClellan case from 2006. I think fundamentally, it's a structural question of whether that requires jury findings or whether it doesn't, whether it can be determined as a matter of law at summary judgment. And the reason for that is because now we're in a situation where your Honor is saying, I, I'm not so sure, I wonder, but the record has a number of meaningful disputes about the quality of the coerciveness, that the court, the district court indeed found those issues on the merits of the claims and that the merits of the claims precluded summary judgment. So I don't think the question is necessarily so much, is qualified immunity barred in this case? At this instance, the question is more whether following the long line of precedence where this situation has come up on summary judgment with respect to application of qualified immunity, whether the, the, the can needs to be kicked down the road a little bit further for those factual determinations to then guide the assessment of the qualified immunity finding. I know you're over your time, but I just, I'm not sure I understand your answer to Judge Walker's question. I, I think what, what I understood was part of the concern here is that there's the, the trial judge and the entire third department saw this as, saw this one way and the officers, why isn't that some evidence that the officers were acting with a reasonable, objectively reasonable good faith basis that there were, that this was legal? It's, it, thank you. It's, it's not to say that it's not relevant at all. I think it's just to say that if there are meaningful factual disputes in the record, and if you were to credit the plaintiff's marshaling of the record to find that a jury could determine that those things were involuntary, it's not for the court as a matter of law at summary judgment to credit that dispute by the direct appeal judges as something that would foreclose plaintiff's claims as a matter of law based on qualified immunity before a trial. Can I, can I ask, I'm not sure I understand exactly which box this belongs in and I'm not sure I agree with the boxes we've been, the discussion we've been having, but I think there's an assumption that the record here is the same as the record that was before the trial court and the intermediate court and the court of appeals. And I understand there's at least one fact in this record on coercion that you argue was not before those courts. Namely, the threat of prosecution should the plaintiff leave. So I had been thinking about that in terms of the causation element on the merits question, but tell me, tell me how you understand it with respect to the question of qualified immunity given the findings of the other courts. Yes, so thank you for that question. I think that it, I think that it speaks to the tension of the district court's reasoning between the merits and the qualified immunity analysis. Again, my position is that the district court found that the right was clearly established following Weaver and Zari and then proceeded in this slightly messy but focused on objective reasonableness analysis and in that context made a variety of factual weighing or factual determinations. And one of the things that in that objective reasonableness analysis the court significantly diminished was, were two facts in fact. One was the plaintiff's deposition in this case, which as your honor mentioned wouldn't have been in the record in the criminal, in the criminal case, where he explained his recollection that he did not feel free to leave. And in addition to that there was the separate fact what, which was that one of the officers told him that he would be charged with escape if he attempted to leave the room. Now, none of that is to say that that determines as a matter of law that plaintiff's claims would prevail at a trial, but I think that for the exact reasons that it precluded summary judgment on the merits, under this court's precedents including McClellan, it has to preclude qualified immunity of summary judgment even if it's going to be later considered after factual findings at a trial. And the idea there is basically if it precludes summary judgment on the merits because there's a disputed fact of the specific intent of the officers and then we have law which says if there's, we have a number of cases, but if there's if sufficient, a disputed fact to survive on the merits, you can't have qualified immunity at the summary judgment stage. Yes, that's correct and I think and the limiting principle to make sure that that doesn't swallow qualified immunity altogether is the clearly established prong, which is to say you only get into this question of whether it's a mixed question of law and fact and law if you've determined that it's a clearly established right. And in this context under Weaver and Zari, that was sort of well-determined in this circuit when the court was making this decision and before the interrogation at issue in 2008. I see I've taken up a great deal of your time and thank you and I'll reserve for rebuttal. Thank you, counsel. You've reserved three minutes for rebuttal. Ms. Gifford. Good morning. My name is Ranan Gifford. I'm from the law firm Patterson, Sampson, Ginsburg & Griffin and I rise on behalf of the respondents in this matter. I think one of the big components of this case is what you were pointing out, Your Honor, that the prosecutor, trial judge, and appellate division all determined that the confession was voluntary and that's persuasive evidence as far as the reasonableness of the officer's mindset because, as other courts have held, how can we expect officers to know more than judges? This case is specific in nature because the interrogation was provided to all of those individuals who made the decision that it was legal. There was no real questions of fact of any behaviors outside of the contours of the interrogation. So I think that goes to my argument on the causation element here. Many of the cases have held that the officers are not liable for unforeseeable acts of courts. So if a judge admits a confession saying it's voluntary, then I believe that in this context, because they reviewed everything, had the confession in their possession. I put things in boxes, forgive me, but I want to understand these points structurally. This is essentially your argument that summary judgment should have been granted on the merits, right? The district court was wrong to conclude that summary judgment should be denied on the merits. The causation argument you're making now is in that box, not qualified immunity, fair to say? Correct, yes. And I know courts sometimes will take the causation element as part of a separate analysis or as part of its view of the merits in general. So I think there's kind of a little bit of confusion on how it's analyzed often and there might be a lot of confusion. So I think that causation is essentially part of that qualified immunity. I think for a lot of the analysis here, it all intermingles, really, and I think that's why the decision ultimately came down to the qualified immunity on the reasonableness, because of the intermingling of the elements and the issues before the court blow. So we have to be working from some sort of established law somewhere. It's not just reasonableness here, but the problem also is the level of granularity. The components of the questioning here in different circumstances, courts could reach different conclusions depending on what it was. Suppose it wasn't three items, it was two or one. Or there was, you know, the kind of totality of the circumstances was somewhat different. I mean, you know, this is a fact-intensive case that even went to the Court of Appeals and really reached a fact-intensive conclusion there, it seems to me. But the question really goes back, it seems to me, to because this is a qualified immunity case, is at the time of the actions that the officers took actions here, what could they have reasonably, was it debatable that what they were doing was lawful? Yes, I believe that the lower court properly held that their behavior was reasonably constitutional and that... That's what the lower court held, that's what we're being asked to review. Correct, yes, and I think for the first... So thank you for telling us what the lower court did, now what do we do? For the first part of the question with regards to the clearly established law, in the general sense, yes, you know, coercing confessions is clearly established. You cannot do that. In this case, we have to look to the specific facts underlying the context of what it was and whether or not the actions taken in the context of the confession were clearly established, right? Was the contours of the law clearly established? And although the court below alluded to it being yes it was, I think there still remains a question as far as were the contours of the law sufficiently identified? And that goes back to the state court decisions, because if it was sufficiently defined, if it was clearly established and the contours were set, then I think it would have been very clear that the conduct was unconstitutional at the state level. But because it wasn't, I think that brings into the argument that the contours were not set and we didn't have a clearly established law on this matter. And then it continues on through the reasonableness aspect of it, because the contours were not so sufficiently defined, they reasonably believed that they were acting constitutionally in their confession. Well, if there's no established law here, then that ends the matter in your favor, doesn't it? Yes, it does. You don't have to worry about reasonableness. Correct. What do we do with his subsequent testimony that he felt like he couldn't leave the interrogation? I would submit that that's not a material question of fact, as far as the analysis for the qualified immunity aspect, or for a question of fact to defeat summary judgment. Why don't you explain? Because the feeling of not being able to leave, for most parts, I believe that's kind of how a lot of questioning and interviewing and interrogation before a police feels. Feeling that you're unable to leave, or that you have to tell the truth, or that there's some aspect of it. And I don't believe that's a material fact as far as the reasonableness of their belief of what they were doing. What about the testimony that he was told he would be arrested for escape, or charged, I can't remember, charged or arrested for escape if he left? I think that falls into the same context of feeling of not being able to leave. And I think while it's a little bit heightened as far as what he asserted occurred, and there is a slight, there's a question of fact on the denial from my officer. Right, but for our purposes, we assume it happened. Correct. So we assume it happened that he was told, though he wasn't detained, and you sort of, I think you have sort of competing, right? He's being told he is allowed to leave and the door is open, and then there's testimony that, which we assume to be true, that outside of the cameras in the hallway, the officer basically threatens to arrest him if he leaves, threatens to charge him if he leaves. So we have to assume that's true. Assuming that's true, isn't that an inference available of malice, of bad faith, and of coercion? None of those facts known to the other, the courts evaluating it, including the Court of Appeals? It is a fact that was not brought before the Court of Appeals and the lower courts as far as that, but I, as far as the reasonableness of the police officer's conduct at the time, I don't think it is a material fact as to that analysis, because... It doesn't matter what the fact is, it doesn't go in the analysis? I don't believe that specific fact is relevant to it, and the question turns out to be, if you're... So, I mean, we could play with this, and I suspect I could get you to agree, if an officer, you know, points a gun at him and says, if you leave, I'll shoot you, would that be a material fact relevant to the analysis? It depends, I guess, in all facts staying the same in this scenario, that could potentially, I wouldn't necessarily agree off the bat that it is, I think it would need to be considered in that, in a full context of the case, and for this... Really? It didn't rise to that, so... I'm surprised at that answer. So, curiously about this case, I think that the Court of Appeals of New York said that this confession should be suppressed, because it's involuntary, regardless of whether or not it's false, and that was because the tactics that the Court of Appeals found to be troubling were used in the circumstances. We don't want confessions in which these tactics are used, and that's... And so, they will lead to a confession, which could be true, it could be false, that doesn't matter. We don't like the tactics. I believe, actually, the Court of Appeals decision was to not determine the legality of the individual tactics. It was, they made a totality of the circumstances analysis. But what I'm saying is, it's easy in this case to equate a false confession with an involuntary confession, and they don't necessarily match, is what I'm saying. A person has a right, and the Court of Appeals said, not to confess, not to just remain silent, and not to say anything. And if you coerce a confession from that person, you may converse him into saying the truth that he didn't want to say. So, that's the evil there. And here, it seems to me that... So, that's another aspect of it, and I think that that gets to the question of the second point about the, whether or not there was, the officers could reasonably believe that what they were doing was fabricating evidence in some way. Correct. That is my point on the fabrication, is coerced testimony is not the equivalent of falsified evidence. Right. Which, you correctly point out, is he could have coerced a true statement from him, based upon the scenarios that were presented by the doctor, by the daughter during the CPS interview, and by the statements made by the wife prior to the second interview. So, I think that context is important. The other thing is, my understanding is that arguable probable cause is arrived at by using an objective standard. That is, would a there was probable cause, or in this case, arguable probable cause. And so, the fact that the officers said, well, we need a, we need the confession, or we don't have probable cause, may not be determinative of that question. Because there could be reasonable officers who think, well, we, there is sufficient other evidence of probable cause here. And then, under those circumstances, wouldn't there be arguable probable cause, looking at it from an objective viewpoint, not dependent upon what the officers subjectively thought. They subjectively thought that they needed the confession to have probable cause. But there was circumstantial evidence in this case, independently of that, which maybe it didn't, which I think you could say lead, led to arguable probable cause. And that is the, the statements that, from the, from the doctors about the head trauma, the statements from the relatives, the wife and the daughter, about this person's behavior, his anger issues, watching the baby. One, I think one of the kids saw him slam the baby down into the crib, that kind of thing. Circumstantial evidence. But the, the officers really wanted more, more evidence than that. They wanted a confession. But probable cause is not proof beyond a reasonable doubt, or even by a fair preponderance. This is probable cause. And so I just wondered if you had any views on that subject. Yes, I believe, I see my time's up, but I could answer that question. The arguable probable cause here analysis is based on the reasonableness and the totality of what is known to the officers at the time. And I think with that circumstantial evidence, there is reasonable, arguable cause there to believe that he's involved or that the child was harmed by him based upon, I think, really specifically, starting with the, with Dr. Edge's statements to him, that, you know, this is really suspicious of non-accidental trauma. That the only way this could have happened really is by high acceleration, deceleration for something like being in a car accident. And the aspects of him and his wife really being the only individuals who have access to the child. And then the additional statements by the wife prior to the first interview. And then his, the nine-year-old child at the CPS, where she made very incriminating statements about what she witnessed of him. And I think it was reasonable then for them to want to further question him and to see if he would confess to what had occurred based upon all the information they had. And I do believe that that's part of that analysis of having the arguable probable cause there. Thank you. I see my time has expired. Thank you, counsel. We'll hear rebuttal. So I wanted to make three, three quick points. I think structurally on this question of whether there was arguable cause or arguable suspicion, I think that sort of exactly demonstrates the, the risk of the reasoning that would be required to affirm this decision to, to sort of draw off of Judge Nathan's hypothetical about the gun threat in the hallway. I think if we're now in the position of standing before this court and arguing about the inferences to be drawn about different facts, I think that precisely demonstrates why this court has repeatedly said that in precisely this situation, qualified immunity is not appropriate for summary judgment. And I think I, I apologize for going back to McClellan, but I think it's especially illustrative. I'll, I'll quote in that case, the district court generally failed to heed the rule that resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity because it quote, accepted only one version of the facts presented in arriving at its findings as to objective reasonableness, as well as to reasonable police officer disagreement. And I think what the, what the court in that decision was getting at is exactly the issue we have here and why it's, why that sort of balance is so sensible and deviating from it, I think would be a mistake because it would risk, it would risk essentially permitting or sanctioning as a matter of law conduct that the facts have not conclusively determined was objectively reasonable. And so I would urge you to say that you should continue to follow that precedent in this context. Just quickly two additional points with respect to whether the right was clearly established. I would also encourage you to go back and look at the reasoning within the Weaver decision. So the Weaver decision didn't just sort of state it as an outset. It analyzed whether the right had been clearly contoured even if it hadn't been immediately declared already in that case. And that was the basis upon which the court analyzed and determined that the coercion right was clearly established and that was in 1994. And so I would encourage you to go back to look at that case with respect to whether we're thinking about this case as turning on the clearly established prong versus the objective reasonableness prong. And then the last point is just with respect to my friend's points about the causation issue on the merits, I would direct you to the arguments made in the reply brief. But in particular that this court's precedents in Zari and Higazi very clearly draw the distinction between acts that are foreseeable versus unforeseeable with respect to whether submitting the false evidence, coerced evidence, what have you, would predictably result, would reasonably foreseeably result in the violation and deprivation of plaintiff's rights as opposed to something that's more legally ambiguous and innocuous where it's not a per se violation like a coerced confession. The distinction between that and the case my friend cited in their brief, it related to an evidentiary issue as opposed to a constitutional violation issue. So I would encourage you on that point to look at Zari and Higazi. And on that point I would thank the court for its time and ask that you vacate and remand for a trial. Thank you counsel. Thank you both. We'll take the case under advisement.